UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRIAN R. WALSHE,<br><br>Defendant | Criminal No. 18Cr10399<br><br>Violations:<br><br>Count One: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Count Two: Interstate Transportation For a Scheme To Defraud<br>(18 U.S.C. § 2314)<br><br>Count Three: Possession of Converted Goods<br>(18 U.S.C. § 2315)<br><br>Count Four: Unlawful Monetary Transaction<br>(18 U.S.C. § 1957)<br><br>Fraud Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C))<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1.     Defendant Brian R. Walshe ("WALSHE") was an individual who resided in Boston and Lynn, Massachusetts.

2.     Andy Warhol was an American visual artist and among the leading figures of "pop art." His work included some of the most expensive pieces ever sold. Warhol's "Shadows" were a series of untitled, abstract, acrylic on canvas paintings from 1978.

1

3.  The Andy Warhol Art Authentication Board, Inc. (the "Board"), was a private corporation associated with the Andy Warhol Foundation for the Visual Arts. Although now defunct, the Board certified the authenticity of certain works by Warhol. The Board assigned a number to such works, sometimes known as a Warhol Foundation number, which was stamped on the back of the work of art.

4.  Victim 1 was an individual who lived in California and owned a gallery in Los Angeles, California, that bought and sold works of art by Andy Warhol.

5.  Witness 1 was an employee of Victim 1's art gallery.

6.  Victim 2 was a resident and citizen of South Korea. In or about 1994, Victim 2 attended college with WALSHE. Victim 2 and Victim 2's family thereafter occasionally hosted WALSHE in South Korea.

7.  In or about 2007, Victim 2's family purchased two Warhol Shadows paintings (hereinafter, the "Paintings"). The Paintings had been certified by the Board and bore the Warhol Foundation numbers PA65.049 and PA65.032. Victim 2 and Victim 2's family owned other valuable works of art, including a Dollar Sign, also by Warhol.

8.  In or about 2011, WALSHE was visiting Victim 2 and his family in South Korea and told Victim 2 that he (WALSHE) could sell some of the art belonging to Victim 2 and Victim 2's family on Victim 2's behalf. Victim 2 trusted WALSHE and let WALSHE take some of the art, including the Paintings and the Dollar Sign, from South Korea so that WALSHE could sell the Paintings for Victim 2 and return the money to Victim 2.

9.  In or about 2011, WALSHE sold the Dollar Sign through Christie's, an auction house in New York, for a hammer price of $40,000. WALSHE also attempted to sell the Paintings

2

at the same time but did not do so. WALSHE did not tell Victim 2 of the Dollar Sign's sale or pass any of the proceeds of that sale to Victim 2.

10.     WALSHE neither gave any money to Victim 2 for the Paintings nor returned the Paintings to Victim 2. In fact, after 2012, WALSHE refused to return any of Victim 2's attempts to reach him through telephone or email. WALSHE did return some of Victim 2's family's art through intermediaries, but not the Paintings or the Dollar Sign.

### Scheme to Defraud

11.     Beginning in or about at least November 2016, and continuing through in or about December 2016, WALSHE devised and executed a scheme and artifice to defraud and to obtain money and property from Victim 1, by fraudulently representing that WALSHE owned the Paintings, when in fact he did not, and that he intended to sell the Paintings. As part of the scheme, WALSHE advertised the Paintings for sale, agreed to sell them to Victim 1, caused Victim 1 to pay $80,000 to WALSHE, but did not provide the Paintings to Victim 1.

12.     As part of the scheme, in early November 2016, WALSHE caused eBay to list the Paintings for sale for $100,000 for the pair. The listing included photographs of the Paintings and indicated that each painting bore the Warhol Foundation authentication stamp. The eBay seller was listed as: ancili2012. The item description was as follows:

> "We are selling 2 Andy Warhol paintings from our private collection. We are parting with these pieces only because we need the money for renovations to our house. Our loss is your gain. Pieces bought from a former Martin Lawrence art dealer in California. We over paid terribly in 2007 for the art. Price paid $240,000. We have enclosed the Christie's estimates as of 2011 for the art as well. Auction range $120,000 to $180,000. We are trying to sell on Ebay (sic) because it is much cheaper and because Christie's won't be able to auction our pieces till May 2017. The pieces are numbered and registered with the Warhol Foundation. Pieces are from 1979. Size 14 inches by 11 inches. Synthetic

3

Polymer Paint and Silkscreen ink on canvas. *Warhol Foundation # PA65.049 & PA65.032.*" (emphasis added)

13. In furtherance of the scheme, WALSHE communicated with Victim 1 by telephone and email regarding WALSHE's offer to sell the Paintings, which WALSHE did not own. On or about November 3, 2016, WALSHE and Victim 1 reached an agreement: WALSHE agreed to sell Victim 1 the Paintings for $80,000. At WALSHE's request, Victim 1 agreed to make the exchange privately, without an escrow service. WALSHE and Victim 1 executed a contract on DocuSign.

14. In reliance on WALSHE's promise to sell the Paintings, WALSHE and Victim 1 agreed that WALSHE would meet Victim 1's employee, Witness 1, for the transaction. On or about November 7, 2016, Witness 1 met WALSHE at the Four Seasons Hotel in Boston, Massachusetts. Witness 1 gave WALSHE a certified check for $80,000, provided by Victim 1. WALSHE gave Witness 1 two paintings, which WALSHE represented were the Paintings, but in fact were not the Paintings.

15. On or about November 7, 2016, the $80,000 certified check was deposited into an account controlled by WALSHE. On or about November 9, 2016, WALSHE caused four transactions titled "Chase Credit Card Bill Payment," totaling $24,900, to be made from the account. In addition, on or about November 21, 2016, there were two cash withdrawals totaling $8,000 from the account controlled by WALSHE.

16. On or about November 8, 2016, Victim 1 discovered that the Paintings were fake and attempted to contact WALSHE via telephone, text message and email. In an effort to conceal his theft and prevent detection of the scheme, WALSHE initially refused to speak to Victim 1. Later, WALSHE told Victim 1 that he was trying to refund Victim 1's money. WALSHE falsely told Victim 1 that he (WALSHE) was waiting for off-shore checks and wires to clear and that bank

systems were down. In the end, WALSHE refunded Victim 1 only $30,000 of the $80,000 that he stole from Victim 1.

17. In addition, as part of the scheme to defraud, WALSHE did not provide any of the money obtained from Victim 1 to the rightful owner of the Paintings, Victim 2 or Victim 2's family.

## COUNT ONE
## Wire Fraud
## (18 U.S.C. § 1343)

The Grand Jury charges:

18.  The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment.

19.  In or about November 2016, in Boston, in the District of Massachusetts, and elsewhere, the defendant,

### BRIAN R. WALSHE,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing the scheme to defraud, to wit:  on or about November 3, 2016, multiple telephone calls from BRIAN R. WALSHE to Victim 1.

All in violation of Title 18, United State Code, Section 1343.

## COUNT TWO
Interstate Transportation For a Scheme To Defraud
(18 U.S.C. § 2314)

The Grand Jury further charges:

20. The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment.

21. On or about November 6 and 7, 2016, in Boston, in the District of Massachusetts, and elsewhere, the defendant,

BRIAN R. WALSHE,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did cause to be transported a person known to the Grand Jury, hereinafter Witness 1, from Los Angeles, California, to Boston, Massachusetts, for the purpose of executing and attempting to execute the scheme and artifice to defraud a person known to the Grand Jury, hereinafter Victim 1, of property having a value of $5,000 and more, to wit: a Bank of America Cashier's Check No. 1669610519 in the amount of $80,000.

All in violation of Title 18, United States Code, Section 2314.

## COUNT THREE
Possession of Converted Goods
(18 U.S.C. § 2315)

The Grand Jury further charges:

22.  The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment.

23.  Beginning in or about 2011, and continuing through the present, in Boston and Lynn, in the District of Massachusetts, and elsewhere, the defendant,

BRIAN R. WALSHE,

did receive, possess, conceal, store, barter, sell and dispose of goods, wares, and merchandise of the value of $5,000 and more, which had crossed a State and United States boundary after having been unlawfully converted in or about 2011 and subsequently brought into Massachusetts, knowing the same to have been unlawfully converted.

All in violation of Title 18, United States Code, Section 2315.

## COUNT FOUR
## Unlawful Monetary Transaction
## (18 U.S.C. § 1957)

The Grand Jury further charges:

24. The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment.

25. On or about November 7, 2017, in the District of Massachusetts, and elsewhere, the defendant,

## BRIAN R. WALSHE,

did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, to wit: a Bank of America Cashier's Check No. 1669610519 in the amount of $80,000, where such property was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, as charged in Count One, and interstate transportation for a scheme to defraud, in violation of Title 18, United States Code, Section 2314, as charged in Count Two.

All in violation of Title 18, United States Code, Section 1957.

## FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C))

The Grand Jury further finds that:

26. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1343, 2314, and 2315, set forth in Counts One through Three of this Indictment, the defendant,

### BRIAN R. WALSHE

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses. The property to be forfeited includes, but is not limited to, the following:

   a. $80,000, to be entered in the form of a forfeiture money judgment; and

   b. Two Shadow Paintings by Andy Warhol, Warhol Foundation Nos. PA65.049 and PA65.032.

27. If any of the property described in Paragraph 26, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 26 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

The Grand Jury further finds that:

28. Upon conviction of the offense in violation of Title 18, United States Code, Section 1957, set forth in Count Four of this Indictment, the defendant,

BRIAN R. WALSHE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

    a. $80,000, to be entered in the form of a forfeiture money judgment.

29. If any of the property described in Paragraph 28, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 28 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

*Glenda Duclos*
FOREPERSON

*[signature]*
TIMOTHY E. MORAN
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: October 31, 2018
Returned into the District Court by the Grand Jurors and filed.

*Kelleyann Belmont*
DEPUTY CLERK
10/31/18 @ 11:45am